# United States Court of Appeals
## For the First Circuit

No. 18-1559

MARK R. THOMPSON; BETH A. THOMPSON,

Plaintiffs, Appellants,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Thompson, Boudin, and Kayatta,
Circuit Judges.

Todd S. Dion on brief for appellants.
Juan S. Lopez, Jeffrey D. Adams, and Parker Ibrahim & Berg LLP on brief for appellee.

February 8, 2019

**BOUDIN, Circuit Judge.** Mark and Beth Thompson sued JPMorgan Chase Bank ("Chase") for breach of contract and violating the statutory power of sale Massachusetts affords mortgagees. Mass. Gen. Laws ch. 183, § 21. The Thompsons alleged Chase failed to comply with the notice requirements in their mortgage before foreclosing on their property. The district court granted Chase's motion to dismiss for failure to state a claim.

On June 13, 2006, the Thompsons granted a mortgage to Washington Mutual Bank on their house to secure a loan in the amount of $322,500. The mortgage included two paragraphs, both standard mortgage provisions in Massachusetts, relevant to this appeal.

First, paragraph 22 required that prior to accelerating payment by the Thompsons, Washington Mutual had to provide the Thompsons notice specifying:

> (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

In addition, paragraph 22 required Washington Mutual to inform the Thompsons of "the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

Case 1:18-cv-10131-RWZ   Document 17   Filed 02/08/19   Page 3 of 10

Second, paragraph 19 described the Thompsons' right to reinstate after acceleration, including the conditions and time limitations related to that right.

> If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before the sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

In 2008, after the United States Office of Thrift Supervision seized Washington Mutual Bank and placed it in receivership with the Federal Deposit Insurance Corporation ("FDIC"), FDIC sold the banking subsidiaries to Chase, which became the mortgagee on the Thompsons' mortgage.

On August 12, 2016, Chase sent default and acceleration notices to the Thompsons. The notices informed the Thompsons that (1) their mortgage loan was in default; (2) tendering the past-due amount of $200,056.60 would cure the default; (3) the default must be cured by November 10, 2016; and (4) if the Thompsons failed "to cure the default on or before 11/10/2016, Chase [could] accelerate the maturity of the Loan, . . . declare all sums secured by the Security Instrument immediately due and payable, commence foreclosure proceedings, and sell the Property."

The notices explained to the Thompsons that they had "the right to reinstate after acceleration of the Loan and the right to bring a court action to assert the nonexistence of a default, or any other defense to acceleration, foreclosure, and sale." The notices also said the Thompsons could "still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place."

On November 15, 2017, after the Thompsons failed to cure the default, Chase foreclosed on the property and conducted a foreclosure sale. On December 15, 2017, the Thompsons filed a complaint in Plymouth County Superior Court, alleging Chase failed to comply with the paragraph 22 notice requirements prior to foreclosing on their property. On January 23, 2018, Chase removed the suit to the District Court for the District of Massachusetts.

Chase then filed a motion to dismiss for failure to state a claim. After opposition and reply, the district court concluded that Chase's default and acceleration notice strictly complied with paragraph 22, including advising the Thompsons of their post-acceleration reinstatement right, and granted Chase's motion to dismiss. The Thompsons now appeal. They argue that the default letter failed to comply strictly with paragraph 22 because the letter did not inform the Thompsons of the conditions and time limitations included in their post-acceleration reinstatement right as described in paragraph 19. They also claim that the portion of the notice that specified that the Thompsons could "still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place" was inaccurate and misleading, though they do not say that their conduct was in any way altered.

A district court's dismissal for failure to state a claim is reviewed de novo, Galvin v. U.S. Bank, N.A., 852 F.3d 146, 153 (1st Cir. 2017), taking all factual assertions in a complaint as true and drawing all reasonable inferences in the plaintiffs' favor; but this does not include legal conclusions clothed as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, the claim must be "plausible." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

In Massachusetts, upon default in the performance of a mortgage, a mortgagee may sell the mortgaged property using the

- 5 -

statutory power of sale, so long as the mortgage itself gives the mortgagee the statutory power by reference. Mass. Gen. Laws ch. 183, § 21. Section 21 requires that, prior to conducting a foreclosure sale, a mortgagee must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." Id.

Because Massachusetts does not require a mortgagee to obtain a judicial judgment approving foreclosure of a mortgaged property, see U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 49 (Mass. 2011), Massachusetts courts require mortgagees to comply strictly with two types of mortgage terms: (1) terms "directly concerned with the foreclosure sale authorized by the power of sale in the mortgage" and (2) terms "prescribing actions the mortgagee must take in connection with the foreclosure sale-- whether before or after the sale takes place." Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1220-21 (Mass. 2015).

The mortgage terms for which Massachusetts courts demand strict compliance include the provisions in paragraph 22 requiring and prescribing the pre-foreclosure default notice. Pinti, 33 N.E.3d at 1221. At first glance, Chase's acceleration and default notice appears to comply strictly with paragraph 22 in the Thompsons' mortgage. By its terms, paragraph 22 required Chase to "inform [the Thompsons] of the right to reinstate after acceleration." Mirroring this language, the notice explained to

- 6 -

the Thompsons that they had "the right to reinstate after acceleration of the Loan."

Because paragraph 19, which defines the Thompsons' post-acceleration reinstatement right, imposes conditions and time limitations on that right, the Thompsons argue that Chase failed to comply strictly with paragraph 22's notice requirement by failing to inform the Thompsons of the conditions and limitations on the reinstatement right. Paragraph 22, however, instructs that Chase inform the Thompsons of their substantive right to reinstate; it does not require that Chase describe in detail the procedure that the Thompsons must follow to exercise the right or the deadlines associated with the right. And paragraph 19 does not, on its own, impose any notice requirements on Chase.

However, Massachusetts law requires that the paragraph 22 notice given to the mortgagor be accurate and not deceptive--note the possible difference between the two concepts--and the Supreme Judicial Court has made clear that inaccuracy or deceptive character can be fatal. In Pinti, the mortgagee's notice said that the mortgagors "have the right to assert in any lawsuit for foreclosure and sale the nonexistence of a default." Pinti, 33 N.E.3d at 1222 (emphasis omitted). This, the Pinti court reasoned, could mislead mortgagors into thinking that they could await a lawsuit by the mortgagee before attacking the foreclosure. Id.

- 7 -

Here, the notice's additional language--"you can still avoid foreclosure by paying the total past-due amount before a foreclosure sale takes place"--could mislead the Thompsons into thinking that they could wait until a few days before the sale to tender the required payment. Suppose the Thompsons had showed up with the payment three days before the sale believing that their tender was timely since the notice said that the tender may be made before the sale. The bank would properly have pointed out that under paragraph 19 a tender must be made at least five days before the sale.

The Thompsons do not claim to have been prejudicially misled, and they certainly did not tender the payment at any time before the sale. The mind of the common-law lawyer is steeped in the proposition that a mistake must ordinarily have had an adverse impact on the plaintiff or a court will disregard it: no harm, no foul. See, e.g., Shaulis v. Nordstrom, Inc., 865 F.3d 1, 15 (1st Cir. 2017) (concluding that fraudulent-misrepresentation claim fails because plaintiff did not allege an actionable injury caused by defendant's false statement). But Pinti frees the mortgagor of any need to prove that the inaccuracy or deception caused harm: "The defendants' assertion that the plaintiffs in this case were not prejudiced by any failure to comply with the provisions of paragraph 22 misses the point. Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to

- 8 -

a particular mortgagor."  Pinti, 33 N.E.3d at 1223 n.20 (citing Foster, Hall & Adams Co. v. Sayles, 100 N.E. 644, 646 (Mass. 1913)).

After all, the bank is the one writing the notice and has ample opportunity and expertise to make it entirely accurate. It may take some imagination to consider every possible way it could be misleading; but the foreclosure procedure allowed to the bank is itself favorable to the bank.  In exchange, both accuracy and avoidance of potential deception are conditions of the validity of the foreclosure, lifting from the Thompsons the need to show prejudice.  The state-court reading of Massachusetts law binds a federal court sitting in diversity.  N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001).

In sum, the bank had no obligation under paragraph 19 to lay out its procedures, but it did have an obligation under paragraph 22 to provide notice and, under Pinti, to make anything it did say accurate and avoid potential deception.  Words are usually elastic, but it does not matter that the purist could well think that the notice in this case was potentially deceptive rather than literally inaccurate (for the Thompsons could defeat foreclosure by payment before the foreclosure date).  Omitting the qualification (that the payment must be tendered at least five days before the foreclosure date) in our view rendered the notice potentially deceptive.

The Thompson brief squarely raised the objection; the bank offered no response to it. Despite the absence of a claim of actual prejudice, the strict-compliance requirement, supported by both the Pinti holding and the rationale supplied for the holding, invalidates the foreclosure. The judgment must be reversed, and the case remanded for further proceedings consistent with this opinion.

It is so ordered.